UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | No.   25-cr-200 (RCL) |
| ) | |
| JUSTIN ALLRED ) | |
| ) | |
| Defendant. ) | |
| ) | |

# EMERGENCY MOTION TO PLACE MR. ALLRED IN THE CUSTODY OF THE ALEXANDRIA DETENTION CENTER OR, IN THE ALTERNATIVE, REQUIRE PROPER MEDICAL CARE

Defendant Justin Allred, with consent of the United States, respectfully requests that the United States Marshals Service place him into a custodial setting where he is properly treated for his epilepsy. Mr. Allred is currently in the custody of the D.C. Department of Corrections and has had two seizures while in detention. Throughout this period, he and counsel have requested that he be provided the proper dosage of his seizure medication through D.C. Jail staff and through DOC General Counsel. He has continued to be undermedicated despite his two seizures. Mr. Al Unity Healthcare be his detention hearing, set for July 13, 2025, be continued to August 4, 2025. Counsel seeks immediate relief or a hearing on this Motion.

**Background**

1

Justin Allred is a 44 year old man with one prior conviction for driving under the influence. He last worked as a Health Systems Engineer for Johns Hopkins University and holds a Masters Degree from Dartmouth College. He also is an epileptic, subject to massive surgeries because of a growth on his brain. Because of his condition, he requires significant medication, 900 mg's of Lamictal per day.

On July 2, 2025, Mr. Allred was presented on a complaint alleging that he committed one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). On July 10, 2025, he filed a Motion to Continue his detention hearing which was grated on July 11th. ECF No. 12. He was indicted with one count of distribution of child pornography on July 15, 2025. ECF No. 13, for which he was arraigned on August 4, 2025.

Mr. Allred was ordered held without bond on July 2, 2025 and placed at the Central Detention Facility. On July 4, 2025, Mr. Allred suffered from a seizure. Counsel learned of this on July 7, 2025 and advised DOC general counsel. Counsel also advised general counsel that the proper dosage of Mr. Allred's medication, Lamictal, is 900mg's but that he had only been receiving 800mg's. Lastly, counsel informed general counsel that Mr. Allred had missed a dosage when going to court and had not received a replacement dosage. The general counsel advised that it would alert "medical," shorthand for Unity Healthcare which runs the medical facilities at the Department of Corrections.

On July 14, 2025, counsel learned that Mr. Allred was still receiving the 800 mg dosage of Lamictal and that he was also only receiving a half dosage of his anti-depressant. The general counsel responded that "he is receiving the medication as prescribed. Medical further notes that medication is in an extended release form, and his lab levels show that this dosage is adequate."

On the days leading up to July 26, 2025, Mr. Allred did not receive his complete medication. On July 26, Mr. Allred suffered from a two-minute seizure in his cell. His cellmate was present and advised a nearby correctional officer of the emergency. The correctional officer peeked his head in and reportedly said, "Looks fine to me."

On July 28, 2025, counsel reported the latest seizure to general counsel and requested that Mr. Allred not be given "extended release" medication but that he be medicated exactly as prescribed. General Counsel replied:

> In speaking with the medication nurse, and in review of the EMR, there is no documentation that supports any seizure activity this past weekend. According to the EMR documentation, his complaint is that he disagrees with the dosage he has been prescribed, and feels he needs more, even though his lab report shows his levels are within normal range. He is generally compliant with his meds but occasionally refuses. He has a chronic care appointment scheduled for this week, and the provider has been notified to address his concern during the visit. Medical will continue to follow up as clinically indicated.

Counsel has informed the DOC that Mr. Allred has separately reported this seizure to his family and to his legal staff. Counsel has invited the DOC to

3

interview Mr. Allred and his cellmate or staff from his unit and pointed out the illogic of fabricating a seizure, particularly for an individual medicated for epilepsy. Counsel has heard no response.

On August 4, 2025, Mr. Allred reported that a DOC officer saw him last week and advised him that he would "be seen." However, he was never brought to a medical appointment or any other appointment and had not been seen. He still has not received his full dosage of medication and he reports regular instances where he does not receive any medication.

The defense, with the government, raised this issue before the Magistrate Court at Mr. Allred's arraignment on August 4, 2025. Counsel understands that the Magistrate Court recommended placement at the Alexandria Detention Center but that the Marshal Service declined.

**Argument**

Mr. Allred is under the care of the Neurology Center and has a complex condition. He is prescribed an elevated dose of Lamictal because of a serious history of epilepsy that has been adjusted based upon past medical knowledge. The Department of Corrections and Unity Healthcare has determined that it would replace the Neurology Center's specialized understanding, with Unity Healthcare's one month knowledge of his medical history and generalized practice, undersized staff, and historically high mortality rates. 8 CCE analysis of DOC data and "Mortality in Local Jails, 2000-2019," Bureau of Justice Statistics, December 2021.

Accessed on January 4, 2024 at https://bjs.ojp.gov/content/pub/pdf/mlj0019st.pdf. It is worth noting that concerns have been raised that some jail deaths may not be reported; see https://www.vera.org/news/the-hidden-deaths-in-american-jails.

The problem of providing prescribed medication is not a new one. The recent Council for Court Excellence Audit of the D.C. Jail reports:

> In CCE's survey of people who resided in the jail during the audit period, eight of 11 respondents reported being unsatisfied with the medical care they received (a 1 or 2 on a 5-point scale); nine of eleven respondents reported waiting a few days between putting in a sick call and being seen; and five of 11 of respondents reported not being given their medication on time or at all daily or a few times per week.366 Some raised concerns about health care in the narrative section of the survey. They described a lack of medical treatment after sustaining physical injuries from another resident, the jail canceling outside medical appointments but indicating that the resident canceled the appointments, late or undelivered medication while in restrictive housing, and continual delays of an outside appointment for serious health issue. One former resident said, "My biggest issue I had was D.C. Jail interfering with Unity Medical contractors. Making it difficult with staff shortages. I would arrive to appointments late and sometimes miss medications." A CIC staff member opined that the once high level of care that Unity was once able to provide has declined over time.
>
> DOC's "Inmate Handbook" describes what residents should expect in the delivery of medical services. "Sick Call Requests for non-emergency medical care [are] made through the sick call system (sick call boxes located on units). Sick call is seven (7) days per week on all units (including weekends and holidays). Sick call slips are available on all units. Sick call slips are collected twice daily, and residents are to be seen by a provider within 24 hours of sick call slip submission." If residents have a grievance related to accessing health care or the quality of their care, they may submit a grievance, and they are meant to have a response within 15 business days.
>
> Grievance documents and interviews with individuals with direct experience with the jail noted a variety of issues related to residents

receiving timely, appropriate care. These issues include missing appointments due to DOC staffing shortages (no staff available to escort), jail medical staff not providing treatment that outside doctors indicated was necessary, requests to speak with a psychologist going unmet, and correctional staff not taking seriously residents' requests to go for medical care.

In analyzing the summary of grievances for the yearlong audit period, health care-related grievances, including access to health care, quality of health care, and/or improper staff action-medical were the largest category of informal grievances and second largest category of formal grievances, making up 25.4% and 18% of all grievances respectively. On average, informal health care-related grievances took 7.73 days to resolve and formal grievances 7.15 days to resolve. (Excluded from the calculation were grievances that were deemed "un-grievable" because they did not indicate a category of grievance.)  CCE reviewed all grievances from the weeks of January 14 and June 24, 2024, many of which were specifically related to health care. ***These included residents claiming that they were not being given medication that was prescribed by an outside provider, not being given access to medication a resident took while in the community, medical supplies prescribed by an outside doctor not being received by the resident in the jail, and delayed or missed outside appointments.*** One diabetic resident filed a grievance saying, "Medical gives me broccoli for breakfast, lunch and dinner. Not enough food for the amount of insulin I get."
*Urgent Need for New D.C. Jail*, pp 81-85.


## Conclusion

Mr. Allred has already had two seizures in only one month of incarceration at the D.C. Jail.  One of those seizures lasted two minutes – he has been told that a seizure of that duration should prompt a visit to the doctor.  He has a very serious condition and under the care of the D.C. Department of Corrections, his life is unnecessarily at risk.  The defense asks only that he be housed in a location where he can receive the appropriate medical care.  The defense believes he should be

placed in a facility that would not replace more qualified and more informed medical opinions with their own. Thus, the defense requests that he be placed at the Alexandria Detention Center.

                Respectfully submitted,

                A. J. KRAMER
                FEDERAL PUBLIC DEFENDER

                     /s/
                _____

                EUGENE OHM
                Assistant Federal Public Defender
                625 Indiana Avenue, N.W., Suite 550
                Washington, D.C.  20004
                (202) 208-7500